UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

QUENTIN WHITE,

                    Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
CORRECTIONS MEDICAL UNIT, JONECIA
FERGUSON, SANDRA DOWLING, TAMARA
HARRISON, TIFFANY MASSEY, CORRECTION
OFFICER JOHN DOE (3-11 SHIFT),

                    Defendants.

-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**09 CV 4238 (NGG)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff, Quentin White, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants, the New York City Department of Corrections ("DOCS") and four corrections officers, were deliberately indifferent to his medical needs while he was incarcerated in violation of his Fourteenth Amendment rights.[1] Defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). The Honorable Nicholas G. Garaufis, United States District Judge, referred defendants' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendants' motions should be granted.

## BACKGROUND

      On May 16, 2009, while plaintiff was detained at the Anna M. Kross Center ("AMKC") on Rikers Island, a fellow inmate was removed from plaintiff's housing unit after testing positive for the H1N1 virus. Amend. Compl., docket entry 7 at 1. Plaintiff and other inmates in the unit

---

[1] Because plaintiff was a detainee, the Fourteenth rather than the Eighth Amendment applies. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).

1

were quarantined as a result. Id. Three days later, on May 19, 2009, plaintiff began to feel sick. Id. During the 7 a.m. to 3 p.m. shift, he asked the corrections officers on the unit "to see medical," but was told that he could not leave the unit due to the quarantine. Id. at 5. Instead, he was told, a doctor would come to the unit to speak with him. Id. At 9:20 a.m., he was seen by a practitioner who noted plaintiff had a stuffy nose and itchy throat, and concluded plaintiff had "nasal congestion." Id. at 13. Plaintiff was prescribed medicine. Id.

Plaintiff repeated his request to see medical during the 3 p.m. to 11 p.m. shift and was given the same response. Id. at 5. Plaintiff was next seen four days later on May 23, 2009, at 10:00 a.m., at which time the practitioner noted that he had a cough due to "allergies" and a temperature of 100.2, which by 2:20 p.m had come down to 97.6. Id. at 15.

On May 25, 2009, plaintiff's condition became critical, as evidenced by a series of progress notes made by medical staff noting a "Medical Emergency." Plaintiff was experiencing chest tightness and wheezing, for which he was given nebulizer treatment. Id. at 16-17. A progress note made at 6 p.m. indicates plaintiff was "having an asthma attack" and that he had been coughing/spitting blood tinged, for the past two days, id. at 18; another note identifies plaintiff's condition as "sarcoidosis," and still another indicates that plaintiff was transported to the clinic on a stretcher. Id. at 19-20.

Plaintiff was "rushed to Elmhurst Hospital" that evening, where he remained until June 1, 2009, at which time he was transferred to Bellevue Medical Center. Id. at 1. Plaintiff was discharged from Bellevue on June 2, 2009. Id. at 1, 10.

In summary, plaintiff alleges that despite becoming ill on May 19, 2009, and his repeated requests to get medical attention outside of his housing unit, defendants denied his requests, leading to the medical emergency on May 25, 2009.

## PROCEDURAL HISTORY

Plaintiff filed the instant action on August 11, 2009. Docket entry 1. Plaintiff's amended complaint named five John and Jane Doe corrections officers working the 7 a.m. to 3 p.m. and 3 p.m. to 11 p.m. shifts. Docket entry 7 at 2, 4. In response to the Court's Order, the Corporation Counsel identified the four individual defendants who worked the shifts plaintiff specified, docket entry 25, and the Court deemed plaintiff's amended complaint to include the four individual defendants. Docket entry 26.

On August 6, 2010, two of the defendants, Jonecia Ferguson and Tamara Harrison, answered the amended complaint. Docket entry 30. Ferguson and Harrison then notified the Court that they intended to move for dismissal pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; Massey, Dowling and the DOC, who had not yet answered, notified the Court that they intended to move pursuant to Fed. R. Civ. P. 12(b). Docket entry 42. Defendants' motions were filed February 28, 2011. Docket entry 55. Plaintiff's only opposition to defendants' motions is a two page letter. Docket entry 48.

## STANDARD OF REVIEW

The Court applies the same standard of review in a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure as it does in a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). On a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing among others Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n.1 (2002)), and draw all reasonable inferences in the plaintiff's favor. Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft

v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, plaintiff must do more than allege facts that are "'merely consistent with' a defendant's liability," id. (quoting Twombly, 550 U.S. at 557), or "speculative," Twombly, 550 U.S. at 555, he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Nonetheless, "[a] document filed *pro se* is to be liberally construed ... a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation and citation omitted); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (other citations omitted).

On a motion to dismiss, the Court may consider, in addition to the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated into the complaint by reference, any document whose terms and effects the complaint relies heavily upon, and public documents. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (deeming public disclosure documents filed with the Securities and Exchange Commission as included in the complaint) (citation omitted). In addition, the mandate to read a *pro se* plaintiff's papers liberally makes it appropriate for the Court to consider factual allegations contained in plaintiff's opposition papers, to the extent they are consistent with the allegations in his complaint. Richardson v. Dept. of Corr., No. 10 Civ. 6137(SAS), 2011 WL

710617, at *3 n.46 (S.D.N.Y. Feb. 28, 2011) (citing Burgess v. Goord, No. 98 Civ.2077(SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999)); see also Agu v. Rhea, No. 09-CV-4732 (JS)(AKT), 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010) (turning to facts contained in plaintiff's opposition papers where *pro se* plaintiff's complaint contained few decipherable facts).[1]

## DISCUSSION

### I. Plaintiff has Failed to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court observed that PLRA's exhaustion requirement affords corrections officials the opportunity to address complaints internally, take administrative action when necessary, filter out potentially frivolous claims, and establish "an administrative record that clarifies the contours of the controversy." Id. at 524-25.

PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532. Moreover, "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably monetary damages, exhaustion is a prerequisite to suit." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)). Additionally, an inmate must properly exhaust administrative remedies. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This

---

[1] To decide the instant motions, the Court refers only to the amended complaint and attached exhibits as well as plaintiff's two-page opposition letter. Docket entries 7 and 48. Although defendants have attached exhibits to their motions, see e.g."Declaration of Martin Bowe in Support of City Defendants' Motion to Dismiss and for Judgment on the Pleadings", Ex. 1-7, docket entry 56, and have provided plaintiff with the requisite notice under Local Civil Rule 12.1, the Court need not refer to defendants' exhibits nor convert the motions to motions for summary judgment. Docket entry 59.

requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

"Although an inmate is not required to allege that he has exhausted his administrative remedies in his complaint, dismissal for failure to state a claim is appropriate where, on the face of the complaint, plaintiff states that he did not exhaust." Flowers v. City of N.Y. (DOCS), 668 F.Supp.2d 574, 578 (S.D.N.Y. 2009) (citing Jones v. Bock, 549 U.S. 199, 215 (2007)). Failure to exhaust administrative remedies prior to commencing a civil rights action requires the dismissal of such an action without prejudice. See Kasiem v. Switz, 756 F.Supp.2d 570, 578 (S.D.N.Y. 2010) ("the law is clear that the appropriate disposition of nonexhausted claims is dismissal without prejudice") (citations and internal quotation marks omitted).

An inmate at Rikers must exhaust each of DOCs five-step review process known as the Inmate Grievance Resolution Program which includes: 1) submitting a complaint to the Inmate Grievance Resolution Committee ("IGRC"); 2) if the IGRC fails to resolve the issue informally, requesting a formal hearing before the IGRC; 3) appealing the IGRC action to the appropriate Commanding Officer; 4) appealing the Commanding Officer's written response to the grievance to the Central Office Review Committee ("CORC"); and 5) appealing the CORC decision to the New York City Bureau of Corrections. See City of N.Y. DOC, Directive 3375 R-A (1985), *available at* http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf.

Plaintiff acknowledges that he failed to exhaust his administrative remedies here. Plaintiff states: "I truthfully did not think about filing a grievance. Once I was released from the hospital I filed the [instant] claim" [in federal court]. Docket entry 7 at 6. By acknowledging that he did not file a grievance, the Court must dismiss plaintiff's claim without prejudice. See

Flowers, 668 F.Supp.2d at 578 ("Since plaintiff admits in his pleading that he never filed a grievance ... it would appear that his complaint fails to state any claim on which relief could be granted").

However, before dismissing plaintiff's claim for failure to exhaust, the Court must consider whether any of the exceptions to the exhaustion requirement apply. The Second Circuit has outlined a three-part inquiry. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). First, "the court must ask whether administrative remedies were in fact available to the prisoner." Id. (citation and internal quotation marks omitted). Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising plaintiff's failure to exhaust as a defense." Id. (citations omitted). Third, "[i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (citations and internal quotation marks omitted).

There is no question that plaintiff could have grieved his medical care claim through the Inmate Grievance Resolution Program. See Jones v. N.Y.C. Dep't of Corr., No. 03 Civ. 3167(RWS), 2006 WL 2481793, at *3 (S.D.N.Y. Aug. 25, 2006) (citing Timmons v. Pereiro, 88 Fed. Appx. 447, 448 (2d Cir. 2004) ("district court properly dismissed the medical care claim against the correctional defendants because New York City's Inmate Grievance Program was available and applied"); Oates v. City of N.Y., No. 02 Civ. 5960(GEL), 2004 WL 1752832, at *2 (S.D.N.Y. Aug. 4, 2004) ("Claims such as plaintiff's regarding delays in treatment while inmates

7

are in custody have frequently been dismissed for failure to exhaust DOC grievance procedures") (citation omitted).

However, plaintiff states in his opposition to defendants' motions that he did not file a grievance because the grievance office at Rikers Island does "not follow their own guidelines." Docket entry 48 at 1. Plaintiff adds: "For you to really prove this you would have to be an inmate there" and that he can "produce a number of witnesses who have been on Rikers Island and they'll tell you exactly what I'm telling you about their grievance office on Rikers Island." Id. at 1-2. Plaintiff contends however that he "went through all the proper procedures but to no avail." Id. at 1. Liberally construed, plaintiff argues that in effect, an administrative remedy was not available to him, or in the alternative, that defendants should be estopped from raising plaintiff's failure to exhaust as a defense because their own actions (i.e. failing to follow their own grievance guidelines) deterred plaintiff from filing a grievance.

However, plaintiff's statement that he "truthfully did not think about filing a grievance," docket entry 7 at 6, belies his claims that he could not exhaust his administrative remedies because Rikers Island does not follow its own procedures, and that he "went through all the proper procedures." Docket entry 48 at 1. Moreover, plaintiff's allegation that other inmates could testify that Rikers Island does not follow its own grievance procedures does not "raise a right of relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). See also Mateo v. Alexander, No. 08 Civ. 8797(RJH)(DCF), 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010). ("A wholly unsupported claim that the [grievance] process is manipulated is not plausible ...").

Third, the Second Circuit has made clear that "the alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust

such remedies when Congress has specifically mandated that he do so." Giano v. Goord, 250 F.3d 146, 152-53 (2001) (citing Nussle v. Willette, 224 F.3d 95, 99 ("The PLRA ... does not make 'effectiveness' of administrative remedies a precondition to the exhaustion requirement"), rev'd on other grounds, Porter, 534 U.S. 516). Plaintiff was required to exhaust his administrative remedies prior to bringing this action. None of the exceptions to the exhaustion requirement apply here. Accordingly, defendants' motions to dismiss and for judgment on the pleadings should be granted.

## CONCLUSION

Defendants' motions to dismiss and for judgment on the pleadings should be granted and plaintiff's complaint should be dismissed without prejudice for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: August 24, 2011
Brooklyn, New York